## In re Deshong

*Albert Foster*, for petitioner.

SHEELY, P. J., November 2, 1954.—The executive director of the Fulton County Board of Public Assistance presented a petition alleging that Iva Deshong is so mentally defective that she is unable to take care of her property and in consequence thereof is likely to dissipate or lose the same and become the victim of designing persons, and praying that a guardian be appointed for her estate. The petition alleged, and the testimony showed, however, that the ward has no estate, either real or personal, and the purpose of the petition and the proposed guardianship was to facilitate the payment of a grant by the Department of Public Assistance toward her support in the amount of approximately $38.50 per month. A hearing was held, after notice as required by statute, at which Iva Deshong was present. We are satisfied that her mental condition is as alleged in the petition.

The question presented is whether a guardian should be appointed for her estate when she has no estate. Actually, it is contemplated that the only function of the proposed guardian would be to receive the public assistance grants and to pay them to or for the benefit of the ward. There are no investments to be made and there is no estate to be managed. The persons best qualified for the contemplated duties are those living with or having a personal interest in the ward and, in all of these cases, the persons usually suggested are members of the ward's family. The small amount payable to the ward is not sufficient to provide any compensation for the guardian or for the employment of an attorney to advise the guardian as to his duties and responsibilities. But a guardian does have definite responsibilities even with a small estate. He must file an inventory (section 402) ; he must represent the ward in all matters of property which might arise (section 401) ; and he must file an account of his administra-

tion of the estate: Section 601. All of this seems unnecessary and unduly burdensome where the guardian is merely to receive and pay out a public assistance grant. Moreover, a duly appointed guardian would be authorized to deal with any property which the ward might later acquire, without further action by the court. A person acceptable as a guardian to handle a public assistance grant might not be acceptable for other purposes.

Section 201 of the Incompetents' Estate Act of June 28, 1951, P. L. 612, seems to apply to the present situation and to fully protect the rights and interests of the incompetent. It provides that where the entire real and personal estate of an incompetent has a gross value of $1,000 or less, all or any part of it may be received and held or disposed of by the person or institution maintaining the incompetent without the appointment of a guardian or the entry of security in all circumstances where the court which would have had jurisdiction to appoint a guardian of the estate of the incompetent shall so direct. Section 202 provides that the court may authorize or direct the person or institution maintaining the incompetent to execute, as natural guardian, any receipt or other appropriate instrument necessary to carry out a decree entered under section 201, and that such decree shall protect all persons and shall have the same effect as an instrument executed by a duly appointed guardian under court decree. The act further authorizes the court to impose conditions concerning the deposits of money or the care of securities for the protection of the incompetent.

Under these sections of the act the person so authorized to act for the incompetent continues to be under the supervision of the court and may be removed upon cause shown. His authority and responsibility, however, is limited by the decree and,

in the instant case, would permit him only to receive the public assistance grants and to disburse them for the benefit of the ward. He would be relieved of the duty of filing an inventory and an account, and would not be authorized to deal with any property which the ward might acquire except by further authorization by the court. An appointment under this section would fully protect the rights and interests of the incompetents and would provide assurance to the Department of Public Assistance that the grants were being applied to their intended purpose.

And now, November 2, 1954, that being the time fixed by order of this court on October 11, 1954, for the hearing of the petition for the appointment of a guardian for Iva Deshong, upon hearing the petition and hearing Iva Deshong personnally, due proof of notice of this hearing to Iva Deshong and to her next of kin having been filed, the court finds that Iva Deshong is so mentally defective that she is unable to take care of her property and in consequence thereof is likely to dissipate or lose the same and become the victim of designing persons, and the court further finds that the entire real or personal estate, wherever located, of Iva Deshong has a gross value of less than $1,000, and consists merely of a grant by the Pennsylvania Department of Public Assistance of approximately $38.50 per month, and that the circumstances are such that this grant should be received and disposed of by the person maintaining the incompetent; therefore it is ordered and decreed that Mrs. Ruby M. Sipes be and she is hereby authorized to receive, hold and dispose of the grants of the Pennsylvania Department of Public Assistance to Iva Deshong, and to execute, as natural guardian, any receipt or other appropriate instrument necessary to carry out this decree including reimbursement agree-

ments required by the Department of Public Assistance in determining the incompetent's eligibility for aid.